UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

OTIS W.,

            Plaintiff,          **DECISION AND ORDER**

    v.

                                1:20-CV-01241 EAW

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

## INTRODUCTION

    Represented by counsel, plaintiff Otis W. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

    Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 12; Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 14) is denied and Plaintiff's motion (Dkt. 12) is granted to the extent that the matter is remanded for further administrative proceedings.

## BACKGROUND

Plaintiff protectively filed his application for SSI on February 7, 2017. (Dkt. 11 at 19, 72)[1]. In his application, Plaintiff alleged disability beginning September 23, 2015. (*Id.* at 19, 164). Plaintiff's application was initially denied on August 3, 2017. (*Id.* at 75-85). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") John Loughlin on May 30, 2019. (*Id.* at 34-60). On June 24, 2019, the ALJ issued an unfavorable decision. (*Id.* at 16-33). Plaintiff requested Appeals Council review; his request was denied on July 10, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since February 7, 2017, the application date. (Dkt. 11 at 21).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of "gunshot wound to the left shoulder, neck and occipital; left shoulder degenerative joint

disease; left upper extremity neuropathy; non-displaced fracture of C-4 spine; cervical spine degenerative disc disease; right occipital non-displaced calvarial fracture; subarachnoid hemorrhage; insomnia; post traumatic headaches; post-traumatic stress disorder; cocaine use disorder, severe; alcohol use disorder, severe; and cannabis use disorder, moderate. (*Id*. at 21). The ALJ further found that Plaintiff's medically determinable impairments of hypertension, lumbago with sciatica, and hyperlipidemia were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.02, 1.04, 11.02, 11.08, 11.14, 12.04, 12.06, and 12.15 in reaching this conclusion. (*Id.* at 22-24).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except with the additional limitations that:

> [Plaintiff] can occasionally push, pull and/or reach overhead with the left upper extremity. [Plaintiff] can frequently balance, kneel, crouch, stoop, and crawl, can occasionally climb ladders, ropes and scaffolds, and can occasionally be exposed to vibrations, unprotected heights and moving machinery parts. [Plaintiff] requires a moderate noise environment, as defined in the DOT and SCO. [Plaintiff] is able to understand and remember simple instructions, can occasionally deal with changes in a routine work setting, and can occasionally deal with coworkers and the public.

(*Id*. at 24).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 27).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of shipping and receiving weigher, electronics worker, and laundry folder. (*Id.* at 28). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 29).

## II.     Remand for Further Administrative Proceedings is Required

Plaintiff argues that this matter must be remanded for further administrative proceedings because: (1) the ALJ failed to reconcile apparent conflicts between the RFC and the vocational expert's testimony; (2) the ALJ improperly relied on his own lay opinion in assessing Plaintiff's RFC; and (3) the ALJ failed to appropriately explain how he arrived at his specific RFC finding. (Dkt. 12-1 at 1). For the reasons set forth below, the Court agrees with Plaintiff that the ALJ improperly relied on his own lay opinion in assessing Plaintiff's RFC and that this error requires remand.

### A.     Determination of RFC

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). The ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with

any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). Thus, generally, "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). "Where, however, the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (quotations, alteration, and citations omitted). In particular, a formal medical opinion is not necessary "when the record is clear and contains some useful assessment of the claimant's limitations from a medical source." *Spivey v. Comm'r of Soc. Sec.*, 338 F. Supp. 3d 122, 127 (W.D.N.Y. 2018) (quotation omitted).

  Here, portions of the ALJ's RFC analysis were clearly based on nothing beyond his own lay supposition and were accordingly unsupported by substantial evidence. The most egregious examples involve Plaintiff's memory and ability to concentrate. There was medical evidence in the record supporting Plaintiff's claim that he suffers from memory impairment as a result of his neurological and psychiatric conditions. In particular, mental status examinations had revealed impaired memory and poor concentration, and Plaintiff's mental health counselor opined that his ability to concentrate was impaired and his recent and long-term memory were poor. (*See* Dkt. 11 at 547, 805). However, the ALJ concluded that Plaintiff had no memory-related limitations based not on any contradictory medical

records, but because "his testimony revealed a good memory and the ability to maintain focus and attention." (*Id*. at 27)².

An ALJ's brief observations of a claimant during a hearing do not constitute substantial evidence, particularly where the claimant's treatment providers have opined to the contrary. *See, e.g., De Leon v. Sec'y of Health & Hum. Servs.*, 734 F.2d 930, 935 (2d Cir. 1984) (an ALJ's lay observations during a hearing "really do not contribute toward meeting the substantial evidence burden in cases of this nature"); *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 643 (2d Cir. 1983) ("The ALJ's observation that Carroll sat through the hearing without apparent pain, being that of a lay person, is entitled to but limited weight, and since only a 40-minute period was involved it is not inconsistent with the medical evidence and Carroll's own testimony." (citation omitted)); *Bazikian v. Colvin*, No. 1:12-CV-0664 LEK, 2014 WL 943410, at *6 (N.D.N.Y. Mar. 11, 2014) (ALJ's finding was not supported by substantial evidence where he "relied almost exclusively on his own judgment and observations"); *Cavanaugh v. Astrue*, No. 1:08-CV-0637LEK/VEB, 2009 WL 4264370, at *8 (N.D.N.Y. Nov. 20, 2009) (finding error where "the ALJ substituted his own judgment for that of Claimant's treating providers without providing an adequate

---

² To be clear, the Court does not find that the ALJ was obliged to credit the opinion of Plaintiff's mental health counselor. On some mental status examinations, Plaintiff showed intact memory and fair concentration. (*See* Dkt. 11 at 554, 576). The ALJ has the discretion to resolve conflicts in the medical evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). However, the ALJ did not discuss or rely on these findings in assessing Plaintiff's claims of memory impairment, and it is not the function of this Court to create a *post hoc* rationale for the ALJ's determinations. *See Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012) ("The ALJ . . . must build an accurate and logical bridge from the evidence to his conclusion to enable a meaningful review." (quotation and alteration omitted)).

explanation for crediting his own, brief observations and his personal lay opinions over the assessments of professionals who have interacted with the Claimant several times a week over an extended period"). The ALJ's reliance on nothing more than his own lay observations was particularly inappropriate in this case, where the hearing was conducted by videoconference. *See Jones v. Saul*, No. 19CV5542LGSBCM, 2020 WL 5775525, at *16 n.12 (S.D.N.Y. Sept. 11, 2020) ("Although an ALJ's observations of a plaintiff's demeanor while testifying are generally entitled to deference, the ALJ is not entitled to make *medical* judgments, or override those of the physicians who have submitted expert opinions, based on a claimant's appearance or conduct while testifying. . . . In this case, the ALJ's personal observation was arguably entitled to even less deference, because the hearing was conducted over videoconference." (emphasis in original)), *adopted*, 2020 WL 5775195 (S.D.N.Y. Sept. 28, 2020).

The ALJ reiterated his lay conclusion that Plaintiff was a "good historian" in discounting the opinion of Plaintiff's mental health counselor's opinion. (Dkt. 11 at 27). He also stated in a conclusory fashion that the mental health counselor's opinion that Plaintiff's "ability to concentrate is impaired and his memory is poor" was not supported by the medical evidence of record. (*Id*.). However, the ALJ failed to reconcile this cursory conclusion with his finding at step three, wherein he concluded that Plaintiff had moderate limitations in the ability to "concentrate, persist or maintain pace." (*Id*. at 23). "While . . . the step 3 and RFC determinations require distinct analyses, where an inconsistency between the ALJ's step 3 and RFC determinations leaves the Court unable to discern the ALJ's reasoning or reconcile inconsistent findings, the Commissioner's decision must be

reversed and remanded for reconsideration." *Eric G. v. Comm'r of Soc. Sec.*, No. 19-CV-1328-FPG, 2021 WL 972503, at *4 (W.D.N.Y. Mar. 16, 2021) (quotation and original alteration omitted). Here, the ALJ failed to explain why he found at step 3 that Plaintiff had moderate limitations in concentration but then, in determining Plaintiff's RFC, entirely discounted the mental health counselor's opinion that Plaintiff's concentration was impaired. The Court is thus unable to glean the ALJ's reasoning.

For these reasons, the Court finds that the ALJ's assessment of Plaintiff's RFC was not supported by substantial evidence. Accordingly, remand of this matter for further administrative proceedings is required.

## B. Plaintiff's Remaining Arguments

As set forth above, Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reason previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may

change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 12) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is denied, and the case is remanded to the Commissioner for further proceedings consistent with this Decision and Order. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 13, 2022
Rochester, New York